agreement into which the defendant voluntarily had entered with the plaintiff association, and it may be said that it was a condition that well might be expected to arise in order to prevent the more disastrous delays that might be produced by labor conditions in the absence of such an agreement.

The plea that it was beyond the corporate power of the Thompson-Starrett Company to vest in any outside body the right to bind it by the regulations adopted by the board of governors merits scant recognition. The agreement with the plaintiff association had reference to the business which, by its charter, the defendant was authorized to conduct. It was designed to facilitate it in its business operations, and to prevent a repetition of the ruinous and hazardous situations with which it had been confronted just prior to the time that it became a member of the association. The act of becoming a member being in itself a lawful one and directly related to its corporate purposes, it seems clear that it did not transcend its powers when it subscribed to the constitution of the association.

As to the final point made by the defendant, that the resolutions of the board of governors were contrary to public policy and void, it seems to me to be unnecessary to do other than to refer to the opinion of Mr. Justice Clarke in the case of City Trust & Safe Deposit Co. v. Waldhauer, 47 Misc. Rep. 7, 95 N. Y. Supp. 222, in which the legality of bonds given to the plaintiff association and identical to those under consideration in this case is discussed and upheld.

There must be judgment for the plaintiffs.

---

### ROBISON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

RAILROADS (§ 350*)—ACCIDENTS AT CROSSINGS—ACTIONS—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

Whether plaintiff, in passing a railroad crossing embracing nine tracks, upon the fourth of which stood a line of cars obstructing the view, was negligent in failing to see an approaching engine on the eighth track, after he had passed the cars, and to stop his team before he reached the sixth track, where they became unmanageable, held to be for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1169–1176; Dec. Dig. § 350.*]

Appeal from Trial Term, Schenectady County.

Action by Tully M. Robison against the New York Central & Hudson River Railroad Company. Judgment of nonsuit, and plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

W. W. Wemple, for appellant.

Angle & Strong (Homer Strong, of counsel), for respondent.

COCHRANE, J. As plaintiff was crossing defendant's tracks with a sleigh and team of horses owned and driven by himself, an engine

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the defendant collided with the sleigh and injured plaintiff. He was traveling on a public highway which crossed the railroad at grade. There is evidence that no signal was given of the approach of the engine. The negligence of defendant was clearly established. Plaintiff was nonsuited because of contributory negligence on his part.

Nine tracks of the defendant crossed the highway at the place of the accident. The collision occurred on the eighth track from where plaintiff approached the crossing. On the fourth track was a row of box cars, one of which projected for half of its length across the highway. Between the fourth and fifth tracks was a distance of about 25 feet. The box cars obstructed plaintiff's view of the approaching engine until he crossed the track on which they were standing. According to his testimony he approached the crossing looking and listening. His horses were trotting at the rate of about 10 miles an hour. They shied around the projecting box car. The road was slippery, and the horses smooth shod. He guided them back into the highway. When on the sixth track he saw for the first time the engine approaching. His horses then became uncontrollable, and, although assisted by his son, who was riding with him, he was unable to stop them before the collision occurred. It was also established that a flagman ordinarily on duty at this crossing was absent, and plaintiff testifies that he looked for him and observed his absence before crossing any of the tracks.

It is doubtless true that under ordinary circumstances it would have been the duty of the plaintiff, after passing the obstructing box cars, to look for approaching trains, and to have stopped before reaching the sixth track, where he says he was when he first saw the approaching engine; and it is also true that this engine was within his view immediately after he passed the box cars. But some consideration must be given to the facts that his horses, although under his control, were restive because of the box car and were slipping. Naturally to a certain extent these facts engrossed his attention. Of greater significance was the absence of the flagman, which circumstance tended to throw plaintiff off his guard and to allay apprehension of danger. He says he looked for this flagman 100 feet before reaching the crossing, and again after passing the box car. There is no pretense that the latter was attentive to his duty, although it was his duty, to the knowledge of plaintiff, to guard this crossing. We cannot say as matter of law that, under the circumstances here existing, it was the duty of plaintiff, after he passed the box car, to see the engine and stop his horses before reaching the sixth track, where they became unmanageable. Plaintiff, having been nonsuited, is entitled on this appeal to the most favorable inferences properly deducible from the evidence. The jury, on the foregoing facts, might have exonerated him from the imputation of negligence, and should have been given the opportunity to do so.

The judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.